IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



| | |
|---|---|
| **VICTORY PARK CREDIT OPPORTUNITIES, LP, and VICTORY PARK CREDIT OPPORTUNITIES INTERMEDIATE FUND, LP,**<br>Appellants, | |
| -vs- | Case No. A-14-CA-682-SS |
| **VPR LIQUIDATION TRUST, by and through GREGORY S. MILLIGAN, Trustee,**<br>Appellee. | |

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Appellee VPR Liquidation Trust, by and through Gregory S. Milligan, Trustee's Motion to Dismiss Appeal as Equitably Moot [#12], Appellants Victory Park Credit Opportunities, LP and Victory Park Credit Opportunities Intermediate Fund, LP's Response [#15] thereto, and Appellee's Reply [#16] thereto; Appellants' Brief [#10], Appellee's Brief [#13], and Appellants' Reply Brief [#14]. Having reviewed the documents, the governing law, the arguments of the parties at hearing, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case is an appeal from a final order of the United States Bankruptcy Court for the Western District of Texas, Austin Division, confirming a Chapter 11 cramdown plan (the Plan). Appellants Victory Park Credit Opportunities, LP and Victory Park Credit Opportunities Intermediate Fund, LP, as well as a third company not party to this appeal, Delfinco, LP, extended

credit to the debtors, VPR Corp. and three affiliated entities (collectively, VPR),[1] in connection with VPR's acquisition of various oil and gas properties and operation of an unsuccessful multi-well drilling program. Appellants claim the Bankruptcy Court erred in confirming the Plan because the Plan unfairly discriminates against them in violation of 11 U.S.C. § 1129(b)(1) and improperly classifies their claims. Appellee VPR Liquidation Trust, by and through Gregory S. Milligan, Trustee, contends Appellants' appeal must be dismissed as equitably moot, and alternatively, that the Plan neither unfairly discriminates against Appellants nor improperly classifies their claims.

In May 2011, VPR, Appellants, and Delfinco executed a series of agreements and promissory notes in favor of Appellants and Delfinco. Appellants and Delfinco were not issued separate promissory notes; all of the debt was reflected in the same debt instruments, but owned in part by Appellants and in part by Delfinco. To secure the indebtedness, VPR granted Appellants and Delfinco a security interest in all or substantially all of VPR's real and personal property. As of the date VPR filed its bankruptcy petition, the VPR debt owned by Appellants and Delfinco totaled approximately $83.3 million; ultimately, Appellants filed secured proofs of claim in the bankruptcy action totaling $50,444,824.71, while Delfinco filed secured proofs of claim totaling $34,518,108.34. *See* Appellants' R.[2] 17-Victory Park-2A–2H (Victory Park Proofs of Claim); *id.* 17-Victory Park-3A–3D (Delfinco Proofs of Claim).[3] Other, unsecured creditors hold unpaid claims against VPR totaling approximately $16 million.[4]

---

[1] The debtors are: VPR Corp.; VPR Operating, LLC; VPR (OK), LLC; and VPR (NM), LLC.

[2] Citations to the record on appeal will be designated as "Appellants' R. [Designated Item Number]" and "Appellee's R. [Designated Item Number]" in this opinion. The parties' designated items, which were too voluminous to scan and make available on CM/ECF, are on file with the Court.

[3] Each party filed four identical proofs of claim pertaining to each of the four debtor VPR entities; thus, Appellants filed eight in total, while Delfinco filed four.

[4] The $16 million figure is Appellee's approximation, based on its review of the lengthy claims registers for each debtor entity. *See* Appellee's Br. [#13] at 4; Appellee's R. 2A–2D (WDTX Bankr. Claims Registers).

In addition to their lending relationship with VPR, Appellants, along with another Victory Park entity not party to this appeal, Victory Park Capital Advisors, LLC, hold a significant ownership stake in VPR Corp., the parent VPR entity. *See* Appellee's R. 1-B (List of Equity Security Holders) at 1; *id.* (Schedules of Assets & Liabilities) at Schedule B-13. Specifically, Appellants own a total of 90.9% of VPR Corp.'s non-voting shares, and Victory Park Capital Advisors owns 100% of VPR Corp.'s voting shares. Additionally, three Victory Park Capital Advisors officers, Richard Levy, Brendan Carroll, and Matthew Ray, served on the board of directors for VPR Corp. Appellants' R. 5 (First Am. Disclosure Statement) at 33.

VPR filed for bankruptcy under Chapter 11 on March 29, 2013, and on April 15, 2013, the United States Trustee appointed the Official Creditors' Committee (the Committee). Appellants' R. 20 (Bankr. Ct. Order Confirming Plan) at 1. On July 26, 2013, the Committee filed a separate adversarial lawsuit (the Adversary Suit) against Appellants and several other Victory Park entities in the Bankruptcy Court. *See* Appellee's R. 41-A (Adversary Compl.). Based on alleged fraud, breach of fiduciary duty, undercapitalization, gross negligence, and inequitable conduct by Appellants as corporate insiders of VPR, the Adversary Suit seeks re-characterization of the transactions between VPR and Appellants not as extensions of credit creating debt, but as infusions of capital in exchange for equity. *See id.* ¶¶ 51–54. In the alternative, the Adversary Suit seeks equitable subordination of Appellants' claims to the claims of general unsecured creditors to the extent the Bankruptcy Court finds the transactions between VPR and Appellants should not be re-characterized as equity. *Id.* ¶¶ 55–59. The Adversary Suit remains pending and is presently set for docket call on April 13, 2016. *See* Order of July 15, 2015 [#35], *VPR Liquidation Trust v. Victory*

*Park Credit Opportunities, LP*, No. 13-01106-TMD (Bankr. W.D. Tex., filed 2013) (available on PACER).

In the Chapter 11 action, in October 2013, substantially all of VPR's operational assets were liquidated with the approval of the Bankruptcy Court. *See* Appellee's R. 10, 11, 18. VPR subsequently moved the Court for proportionate distribution of the proceeds from the liquidation to Delfinco and Appellants. *See id.* 24, 25. The Court granted the motion as to Delfinco, but denied it as to Appellants, citing "the pending adversary proceeding" as the reason for the denial. Appellee's R. 39 at 87:25–88:1. The approximately $2.6 million which would have been paid to Appellants, identified in the bankruptcy proceeding as the "Disputed Sales Proceeds Cash," is being held in trust pending the outcome of the Adversary Suit. *See* Bankr. Ct. Order Confirming Plan ¶ 10 (Plan Modification).

Following liquidation of VPR's operational assets, on February 14, 2014, the Committee filed its First Amended Chapter 11 Plan and First Amended Disclosure Statement. Bankr. Ct. Order Confirming Plan at 1. The Plan sets forth a framework for administration of VPR's remaining assets, the bulk of which are litigation causes of action; the Plan directs the Trustee to liquidate those causes of action, creating the pool of cash, or "Distributable Litigation Proceeds," out of which allowed claims will be paid. *See id.* Ex. 1 (Plan) at 1; Plan Ex. 1 (Definitions) ¶ 29 (defining "Distributable Litigation Proceeds"). The Plan classifies four separate classes of interests: (1) Class 1, priority claims; (2) Class 2, general unsecured claims; (3) Class 3, Appellants' claims; and (4) Class 4, equity interests. *See id.* at 4–5; Plan Modification. The Plan treats Class 2 claims as follows:

**Class 2: General Unsecured Creditor Claims** [. . .]

4.6     Treatment: After payment in full of Allowed Class 1, with funds remaining from the Distributable Litigation Proceeds, if any, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such claim, its Pro Rata portion of Distributable Litigation Proceeds.

Plan at 4. Appellants' claims—Class 3 claims—are treated as follows:

**Class 3: Subordinated Claims** [. . .]

4.6     Treatment: After payment in full of Allowed Classes 1 and 2, with funds remaining from the Distributable Litigation Proceeds, if any, the subordinated Claim of [Appellants], if any, shall be satisfied from the Distributable Litigation Proceeds. [Appellants] shall not receive a distribution on account of their Allowed subordinated Claims unless and until (i) the [Litigation] Trustee resolves the [Adversary Suit] in a manner that yields a subordinated claim (and not a characterization as equity) and (ii) holders of Allowed Class 1 through 2 Claims have been paid in full on account of such Claims.

In the event the "Claims" asserted by [Appellants] are characterized as equity, this class is vacant. In the event Claims of [Appellants] prevail in the [Adversary Suit] such that their Claims are neither subordinated nor deemed equity, Claims of [Appellants] shall be considered Secured Claims with respect to the Disputed Sales Proceeds Cash and any other of the Debtors' assets subject to Claims of [Appellants'] Liens, if any. In such event, with respect to Claims of Victory Park Credit Opportunities Intermediate Fund, LP and Victory Park Credit Opportunities, LP['s] Allowed deficiency Claim, if any, such Allowed Claim will be paid *pari passu* with the Allowed Claims in Class 2. [. . .]

Unless and until the Litigation Trustee prevails in or resolves by agreement with [Appellants] the [Adversary Suit], the VPR Litigation Trustee shall not be authorized to utilize in any manner the Disputed Sales Proceeds Cash and such funds shall remain subject to the alleged . . . Claims of [Appellants] and held in trust pending the conclusion of the [Adversary Suit] by the Litigation Trustee.

Plan Modification. The Plan classified all four classes as impaired and eligible to vote. Plan ¶ 2.2. At least one of the four impaired classes had to vote in favor of the Plan in order for the Plan to be confirmable, *see* 11 U.S.C. § 1129(a)(10); only Class 2 voted to accept the Plan. *See* Bankr. Ct. Order Confirming Plan ¶ 14 (setting forth the ballot tabulation).

Unlike Appellants, Delfinco was not separately classified in the Plan; rather, Delfinco settled with the Committee and that settlement was incorporated into the Plan. *See* Plan at 1 (discussing the "Delfinco Compromise"). Pursuant to the settlement, Delfinco's secured claim was allowed as filed, and Delfinco received all of the cash from VPR's sale of its operating assets less the Disputed Sales Proceeds Cash and certain administrative costs. *See* Appellants' R. 16 (Hr'g Tr.) at 20:6–21:7. In exchange, Delfinco waived its approximately $10 to $15 million unsecured deficiency claim. *See id.* at 21:9–23. On March 24, 2014, the court approved the Delfinco settlement. *See* Appellants' R. 15.

While Appellants did not object to the Delfinco settlement, Appellants objected to confirmation of the Plan, raising the same discrimination and classification issues presently on appeal.[5] Following two hearings, on April 23, 2014, over Appellants' objections, the Bankruptcy Court entered an order confirming the Plan. *See* Bankr. Ct. Order Confirming Plan at 2–3. Appellants filed their notice of appeal on May 7, 2014; however, Appellants did not seek a stay of the Bankruptcy Court's order, and the Plan took effect on May 8, 2014. *See* Appellants' R. 21 (Notice of Appeal); Mot. Dismiss [#12-1] Ex. 1-A (Notice of Effective Date).

On the day the Plan took effect, VPR, the Committee, and Gregory Milligan, as Plan Trustee, executed the "VPR Liquidation Trust Agreement." *See* Notice of Effective Date Ex. A (VPR Liquidation Trust Agreement). Under the Agreement, VPR and the Committee assigned all of their interests in all the assets comprising VPR's bankruptcy estate to the VPR Liquidation Trust, which is tasked with liquidating all such assets and distributing the proceeds in accord with the Plan. *See*

---

[5] Appellants also raised a third issue related to feasibility of the Plan in the Bankruptcy Court which they chose not to appeal. *See* Appellants' Br. [#10] at 1 n.2.

*id.* at 3. Since establishment of the Trust, the following events have taken place: (1) the sole officer and board member of VPR resigned, the VPR entities were substantively consolidated, and bankruptcy counsel concluded its representation of VPR; (2) the Committee was disbanded and dissolved; (3) the Trustee established bank accounts for the Trust and a trust account for the Disputed Sales Proceeds Cash; (4) pursuant to a compromise approved by the Bankruptcy Court, Archer Wireline, LLC, a creditor of VPR not party to this appeal, loaned the VPR Liquidation Trust $85,000; (5) the Trustee obtained counsel to represent the Trust; (6) pursuant to the Bankruptcy Court's approval, the Trust paid $16,147.48 to administrative creditor Summit ESP, LLC; (7) the Trust paid a mediator $2,805; (8) the Trust was substituted as the real party in interest in the Chapter 11 proceeding; and (9) the Trust filed a second adversary action against Appellants and others.[6] *See* Mot. Dismiss [#12-1] Ex. 1 (Milligan Decl.).

The record on appeal was transmitted to this Court on July 23, 2014. *See* Transmission of R. on Appeal [#1]. Appellee filed its motion to dismiss on January 16, 2015. On February 13, 2015, the Court heard oral argument on both the motion to dismiss and the merits of the appeal. Both the motion and the appeal are now ripe for decision.

## Analysis

### I.  Standard of Review

On appeal, "[a] bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed de novo." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). "Under a clear error standard, this court will reverse only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted).

---

[6] *See Milligan v. Levy*, No. 15-01004-TMD (Bankr. W.D. Tex., filed Jan. 5, 2015) (available on PACER).

## II.     Application

As set forth below, the Court turns first to Appellee's motion to dismiss and finds while Appellants' improper classification claim is equitably moot, Appellants' unfair discrimination claim is justiciable. Turning to the merits of the unfair discrimination claim, the Court affirms the decision of the Bankruptcy Court.

## A.     Equitable Mootness

Equitable mootness authorizes a reviewing court to decline review of an otherwise viable appeal of a Chapter 11 bankruptcy plan, but only when the reorganization has progressed too far for the requested relief practicably to be granted. *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 (5th Cir. 2010). Unlike the more familiar concept of Article III mootness, equitable mootness is prudential, not jurisdictional; it recognizes "that there is a point beyond which [reviewing courts] cannot order fundamental changes in reorganization actions." *In re Manges*, 29 F.3d 1034, 1038–39 (5th Cir. 1994). In determining whether an appeal of a confirmation plan is equitably moot, the Fifth Circuit considers three factors: "'(i) whether a stay has been obtained, (ii) whether the plan has been substantially consummated, and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan.'" *Blast*, 593 F.3d at 424 (quoting *Manges*, 29 F.3d at 1039). While the factors have no individual set weights, "if no stay has been obtained and the plan has been substantially consummated, the more likely the third prong indicates equitable mootness." *Id.* However, although substantial confirmation "is a momentous event, it is not necessarily fatal to the appeal of a confirmed reorganization plan"; only when the requested relief "will likely unravel the plan" should the court abstain from reviewing the appeal. *Id.* at 424–25.

Here, both parties agree Appellants did not seek a stay and the Plan has been substantially consummated.[7] *See* Resp. [#15] ¶ 2; Reply [#16] ¶ 1. Whether this appeal is equitably moot thus turns upon "whether the relief requested would affect either the rights of parties not before the court or the success of the plan." Mindful that "equitable mootness applies to specific claims, not entire appeals," *see In re Pac. Lumber*, 584 F.3d 299, 241 (5th Cir. 2009), the Court must examine each of the two issues presented on appeal[8]—(1) whether the Plan unfairly discriminates against Appellants in violation of 11 U.S.C. § 1129(b)(1) and (2) whether the separate classification of Appellants' claims under the Plan is proper—individually to determine whether they are equitably moot.

Appellee itself suggests the unfair discrimination issue is *not* equitably moot (without quite conceding the point). *See* Reply [#16] at 2 n.1 ("In contrast to the classification issue, the issue regarding the alleged unfair discrimination vis-à-vis Delfinco is more targeted. Fundamentally, this issue deals with a finite sum of money which is being held by the Trust in a segregated account pending the outcome of litigation. . . . [I]t is perhaps conceivable [if Appellants prevailed] the reviewing court could fashion relief that would not harm third parties or eviscerate the Plan."). The Court agrees Appellants' unfair discrimination issue, which concerns treatment of the secured portion of Appellants' claim versus treatment of the secured portion of Delfinco's claim, is

---

[7] "Substantial consummation" is defined by the Bankruptcy Code as: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

[8] While Appellants articulate four separate questions on appeal, the Court agrees with Appellee that those four questions raise only two issues. *See* Appellants' Br. [#10] at 1 (listing in their statement of issues "[w]hether the Bankruptcy Court erred in confirming the [Plan]"; "[w]hether the plan unfairly discriminates against Appellants in violation of 11 U.S.C. § 1129(b)(1)"; "[w]hether the Plan impermissibly treated and classified Appellants' debt as subordinated, and whether Appellants' debt can be treated differently from the balance of the secured debt"; and "[w]hether the Plan improperly classified the deficiency claim of Appellants from other unsecured claims").

justiciable. The gravamen of the claim is that Delfinco has been paid its portion of the sales proceeds, while Appellants have not: their portion remains in the Disputed Sales Proceeds Cash trust account. Relief would require nothing more than payment of the Disputed Sales Proceeds Cash to Appellants,[9] which would have no significant adverse effect on the success of the Plan or the rights of parties not before the Court.

The real meat of the equitable mootness dispute concerns Appellants' improper classification claim. According to Appellee, because Appellants' challenge to their separate classification rests in part upon a contention the classification amounted to illegal gerrymandering to obtain the sole class-wide vote in favor of the Plan—and since at least one impaired class of creditors must vote to accept the Plan in order for the Plan to be legally confirmable—remedying that alleged wrong would require undoing confirmation of the Plan in its entirety. *See* Reply [#16] ¶ 4; Appellants' R. 16 (Objection to Confirmation) ¶ 6 (arguing separate classification of Appellants was "nothing more than impermissible gerrymandering in order to obtain an affirmative vote in Class 2"); *see also* 11 U.S.C. § 1129(a)(10) (requiring at least one impaired class to accept the Plan); Bankr. Ct. Order Confirming Plan ¶ 14 (ballot tabulation indicating Class 2 was the only impaired class that voted to accept the Plan). Appellants, on the other hand, take the position very little has actually occurred since confirmation of the Plan, as only Archer Wireline, LLC has acted in reliance on the Plan (by giving Appellee the $85,000 loan), and less than $19,000 has been paid from the Trust to other creditors.

---

[9] Appellees do state that Appellants "seek only the wholesale reversal of confirmation" and not a "limited or targeted" form of relief for the alleged unfair discrimination. The Court notes, however, that Appellants' brief seeks both reversal of the confirmation order and "such other and further relief to which Appellants may be justly entitled." Appellants' Br. [#10] at 12.

The Court agrees with Appellee that the improper classification claim is equitably moot. As noted in the Plan itself, if Appellants' claims were indeed improperly classified, Appellants' potential allowed Class 2 unsecured deficiency claim "could be as high as $47,775,793.71," which would "substantially dilute[]" the distributions available to current Class 2 unsecured creditors—raising the question whether the current Class 2 unsecured creditors would vote to confirm the Plan. *See* Plan Modification (explaining the possibility in detail). Remedying the alleged improper classification would require wholly unwinding the Plan in order to reclassify creditors and take a new vote. Although Appellants are correct that few distributions have been made since confirmation of the Plan—which makes sense, given that the creditor classes are to be paid from the Distributable Litigation Proceeds, which have yet to come into existence—wholly unwinding the Plan would necessarily seriously threaten its success. Consequently, this claim is equitably moot. *See Pac. Lumber*, 584 F.3d at 251 (finding misclassification/gerrymandering claim equitably moot because "no remedy . . . is practicable other than unwinding the plan"); *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 488 (2d Cir. 2012) (same, citing *Pac. Lumber*).

### B.   Unfair Discrimination Claim

As all of the impaired creditor classes did not vote to accept the Plan, the Committee had to "cram down" the Plan on Appellants (and the other dissenting classes) pursuant to 11 U.S.C. § 1129(b). In order to be confirmable over the objection of a dissenting class, a plan must not unfairly discriminate against the dissenting class. *See* 11 U.S.C. § 1129(b)(1); *Pac. Lumber*, 584 F.3d at 251. Note that § 1129(b) permits "'discrimination,' so long as it is not 'unfair.'" 7 COLLIER ON BANKRUPTCY ¶ 1129.03[3]; *In re Cypresswood Land Partners, I*, 409 B.R. 396, 434 (Bankr. S.D. Tex. 2009). The Bankruptcy Code, however, does not define "unfair discrimination," and courts in

-11-

this Circuit have articulated at least two tests aimed at determining when discrimination against a dissenting class is impermissibly unfair. *See In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850, 863–64 (Bankr. S.D. Tex. 2001); *In re Mortg. Inv. Co. of El Paso*, 111 B.R. 604, 614–15 (Bankr. W.D. Tex. 1990) (citing *In re Aztec Co.*, 107 B.R. 585, 590 (Bankr. M.D. Tenn. 1989)). The *Sentry Operating* court applied a test which creates a rebuttable presumption of unfair discrimination where there is (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either a materially lower recovery for the dissenting class or an allocation of materially greater risk to the dissenting class in connection with its proposed distribution. *Sentry Operating*, 264 B.R. at 863–64 (quoting Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 AM. BANKR. L.J. 227, 227 (1998)). The presumption may be rebutted by showing a lower recovery for the dissenting class "is consistent with the results that would obtain outside of bankruptcy, or that a greater recovery from the other class is offset by contributions from that class to the reorganization." *Id.* at 864 (quoting Markell at 227).

In *Mortgage Investment Co.*, this District applied a test which directs courts to consider four factors in determining whether unfair discrimination exists: (1) whether the discrimination is supported by a reasonable basis; (2) whether the plan could be confirmed and consummated absent the discrimination; (3) whether the discrimination is proposed in good faith; and (4) the treatment of the classes discriminated against. *Mortg. Inv. Co.*, 111 B.R. at 614–15 (citing *Aztec Co.*, 107 B.R. at 590).

Here, the Bankruptcy Court applied the four-factor *Mortgage Investment Co.* test and made the following findings concerning the absence of unfair discrimination:

> The first factor is whether the discrimination is supported by a reasonable basis. And I—and I think clearly it is. The—the creditors are—are—have a different standing and most significantly, . . . one creditor has settled and the other has not.
>
> Second, whether the Debtor can confirm and consummate a Plan without the discrimination. What the Plan does in this case is it attempts to move on. It attempts to make this transition from a Debtor-In-Possession into a liquidating trust. At the same time, it attempts to preserve the ability to pursue the lawsuit against the Victory Park parties while at the same time preserving the rights of the Victory Park parties, regardless of how that lawsuit comes out.
>
> And the only way to do that is to withhold distribution of the $2.6 million and to withhold distributions to the Victory Park parties, vis-à-vis the Class II creditors, until we know how that lawsuit is going to come out. That preserves the rights of the Victory Park parties in the event they actually win the lawsuit. It preserves the rights of the other parties in the event that the Victory Park parties lose the lawsuit.
>
> On that basis, it's necessary for the Debtor to effect that discrimination in order to confirm and consummate the Plan. In other words, the Debtor can move on, can get the Plan confirmed, but at the same time, can preserve the rights of the parties pending resolution of the pending lawsuit.
>
> The third factor is whether the discrimination is proposed in good [faith]. There's been no suggestion that it has not been proposed in good faith . . . [a]nd I find that it has been proposed in good faith.
>
> And then significantly, the fourth factor is the treatment of the classes discriminated against. The class discriminated against would be Class III, the Victory Park parties. And if they win their lawsuit, they will get exactly the same treatment with respect to their secured claim as did Delfinco. If—and likewise, if they win the lawsuit, they'll get the exact same treatment as the unsecured creditor class, Class II, with respect to their unsecured deficiency claim.
>
> And so in that respect, in—in essence, if you look at the lawsuit as preserving the rights of the parties, you could say there's been no discrimination at all. To the extent . . . that the lawsuit is the discrimination, I think that . . . discrimination is appropriate and called for under this four-factor test set forth in Judge King's decision.

Hr'g Tr. at 82:24–84:20.

Appellants argue the Bankruptcy Court applied the fourth factor of the *Mortgage Investment Co.* test in a manner inconsistent with the *Sentry Operating* test by relying on the possibility

"Appellants *might* wind up in the same position as Delfinco" in finding the Plan treated Appellants reasonably. Appellants' Br. [#10] at 8. In Appellants' view, under *Sentry Operating*, "this is the very essence" of unfair discrimination, because in making Appellants' distribution reliant on the outcome of the Adversary Suit, the Plan allocates materially greater risk to Appellants in connection with their proposed distribution. See *Sentry Operating*, 264 B.R. at 863–64.

The parties' disagreement on this point highlights the confusion in this area of bankruptcy law. Courts in this and other Circuits have struggled to consistently articulate a precise standard for determining whether a plan unfairly discriminates against a dissenting class. *See, e.g., In re Crawford*, 324 F.3d 539, 542 (7th Cir. 2003). The Fifth Circuit has provided no clear guidance,[10] and as explained above, lower courts in this Circuit have applied varying tests. In *In re Crawford*, a Seventh Circuit panel considering unfair discrimination in a Chapter 13 action noted this difficulty, described four different tests for unfair discrimination which have been floated in the jurisprudence, pointed out the flaws in all four, and concluded: "We haven't been able to think of a good test ourselves." *Id*. In the *Crawford* panel's view, "this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law . . . ; and to uphold his determination unless it is unreasonable (an abuse of discretion)." *Id*. (citing *In re Bentley*, 266 B.R. 229, 239–40 (B.A.P. 1st Cir. 2001); 8 COLLIER ON BANKRUPTCY § 1322.05[2]). Echoing that sentiment, Collier on Bankruptcy concludes that "[r]egardless of the test used, most cases tend to look

---

[10] Specially concurring in *In re Ramirez*, one Fifth Circuit judge indicated in a footnote that "[b]ankruptcy courts generally use the . . . four-part test to determine whether the plan unfairly discriminates[.]" 204 F.3d 595, 598 n.2 (5th Cir. 2000) (Benavides, J., specially concurring).

at the disparity of treatment proposed in the plan, and whether such disparity can be justified under the Code." 7 COLLIER ON BANKRUPTCY ¶ 1129.03[3][a].

Here, no matter which test is applied, the Court agrees with the Bankruptcy Court that the Plan does not unfairly discriminate against Appellants, as to the extent the Plan treats Appellants disparately, that disparity is justified. Applying the four-part *Mortgage Investment Co.* test, the Court agrees with the conclusions of the Bankruptcy Court. The Court declines to disturb the Bankruptcy Court's findings that Appellants' materially different position relative to VPR, both given Appellants' affiliation with VPR and Delfinco's settlement, is a reasonable basis for any discrimination and that the discrimination effected by the Plan was proposed in good faith. The differing treatment of Appellants and Delfinco enabled the liquidation of VPR to proceed while preserving Appellants' alleged right to the Disputed Sales Proceeds Cash—which Appellants will receive if they prevail in the Adversary Suit. While it is true Appellants are deprived of the capital pending resolution of the Adversary Suit, the Court finds any discrimination inherent in that deprivation does not rise to the level of unfairness. *Cf. In re Le Blanc*, 622 F.2d 872, 879 (5th Cir. 1980) (finding plan did not unfairly discriminate against insider unsecured creditors although it classified them in a separate class which received nothing under the plan).

Applying the *Sentry Operating* test, even if the Plan allocates a materially greater risk to Appellants vis-à-vis Delfinco by withholding the Disputed Sales Proceeds Cash until resolution of the Adversary Suit, the presumption of unfair discrimination that arises is rebuttable because Delfinco's "greater recovery . . . is offset by [its] contributions . . . to the reorganization." *See Sentry Operating*, 264 B.R. at 864. As the Bankruptcy Court noted, Delfinco settled its claims, and in so doing, agreed to waive its $10–15 million unsecured deficiency claim in exchange for immediate

payment of its share of the sales proceeds. Removing that deficiency claim from the unsecured creditors' pool benefitted the unsecured creditor class, and in exchange for providing that benefit, Delfinco received different treatment than did Appellants. Any discrimination in that result is not impermissibly unfair.

While Appellants' briefing is not entirely clear, it appears Appellants may further claim unfair discrimination based on "the treatment provided to Appellants' unsecured deficiency claim [versus] other unsecured creditors." Appellants' Br. [#10] at 10; *compare id. with* Appellants' Reply Br. [#14] at 2 (discussing unfair discrimination claim solely with reference to Delfinco). This argument bleeds into Appellants' misclassification claim, and is equitably moot to the extent Appellants seek to unwind the plan such that they may be reclassified in Class 2. However, as "[a] finding that the plan *classification* scheme is proper does not necessarily resolve the question of *unfair discrimination*," see Mortgage Inv. Co., 111 B.R. at 614, the Court considers and rejects Appellants' argument (to the extent raised) that the Plan unfairly discriminates against Appellants vis-à-vis other unsecured creditors. The Court agrees with the Bankruptcy Court that the Plan preserves Appellants' legal rights pending the outcome of the Adversary Suit; if Appellants' claims are ultimately characterized as debt and not subordinated debt or equity, Appellants will be paid *pari passu*—on equal footing—with the Class 2 unsecured creditors. Additionally, as Appellee points out (and Appellants do not dispute), there are currently no Distributable Litigation Proceeds to be paid to any unsecured creditors and there will be no such proceeds until the Adversary Suit is resolved. Thus, payment of the Class 2 creditors and Appellants pursuant to the Plan will occur after the propriety of subordinating or re-characterizing Appellants' claims has been conclusively resolved. If Appellants win the suit, they will be paid as would any other Class 2 creditor; if their claims are deemed subordinated or their debt is re-

characterized as equity, they will be paid in accord with their legal right to any distribution. Assuming this scheme is at all discriminatory, it is not unfair.

The decision of the Bankruptcy Court concerning Appellants' unfair discrimination claims is affirmed.

## Conclusion

Accordingly:

IT IS ORDERED that Appellee VPR Liquidation Trust, by and through Gregory S. Milligan, Trustee's Motion to Dismiss Appeal as Equitably Moot [#12] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FINALLY ORDERED that the judgment of the Bankruptcy Court concerning Appellants' unfair discrimination claims is AFFIRMED.

SIGNED this the 22nd day of September 2015.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE